UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | | |
|---|---|---|
| MONIKA PAULUS, | : | |
| | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | |
| -against- | : | **COMPLAINT** |
| | : | |
| | : | |
| | : | (Plaintiff Demands |
| | : | A Jury Trial) |
| HOWARD MARKS, | : | |
| NANCY MARKS and ANDREW | : | |
| MARKS individually, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------X

Plaintiff, Monika Paulus ("hereinafter "Plaintiff" or "Paulus"), by and through her attorneys, L & D LAW P.C, complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

### NATURE OF THE CASE

1.      This is an action to remedy discrimination based on age discrimination, hostile work environment, retaliation and unlawful termination brought by Plaintiff Monika Paulus pursuant to the provisions of the Civil Rights Act of 1866, and pursuant to Article I, §11 of the New York State Constitution for the violation of her due process and other constitutional rights to be free from age discrimination, hostile work environment, retaliation and unlawful termination.

2.      Plaintiff also complains pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") and to remedy violations of the laws of the State and City of New York, based upon diversity and the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated and retaliated against

by her employer on the basis of age discrimination, retaliation and unlawful termination inflicted upon Plaintiff by Defendants.

## JURISDICTION AND VENUE

3.  Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

4.  The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Southern District of New York.

## JURY DEMAND

5.  Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

6.  Plaintiff Monika Paulus is an individual woman who is a resident of Nassau County, New York.

7.  At all times material, Defendant Howard Marks ("Howard"), was and is a legal employer that does business in the State of New York.

8.  At all times material, Defendant's wife, Defendant Nancy Marks (hereinafter "Mrs. Marks), jointly assumed the position of employer along with her husband Mr. Howard Marks. Mrs. Marks is an individual residing in the State of New York.

9.  At all times material, Defendant Howard not only acted in his individual capacity as Supervisor but acted in an official capacity as the Employer of the Plaintiff, as evidenced by official tax records.

10. At all times material, Defendant Andrew Marks was and is the son of Nancy and Howard Marks.

11. At all times material, Defendant Andrew Marks acted in concert with Howard and

Nancy Marks as a joint employer of the Plaintiff.

12.   This case involves the systematic unlawful age-based discrimination and retaliatory actions of Defendants which culminated in the unlawful reduction in compensation and constructive discharge/termination of the Plaintiff.

## PROCEDURAL HISTORY

13.   On or about January 1, 2021, Plaintiff Paulus filed a charge of age discrimination, retaliation and unlawful termination with the Equal Employment Opportunity Commission ("EEOC").

14.   On or about May 20, 2021, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the Defendants in federal court.

15.   This lawsuit is being filed within (90) days of Plaintiff's receipt of the Right to Sue.

## FACTS

16.   On or about June 1, 2014, Plaintiff Paulus began her employment with Defendants as a direct Personal Assistant to the Marks family.

17.   At all times material, the Marks family employed over twenty (20) employees.

18.   Plaintiff was interviewed by both Howard and Nancy Marks prior to her getting hired.

19.   Plaintiff's responsibilities included general management of portions of the Marks' financial affairs; namely, arranging for payment of invoices owed to third parties, and utilities for multiple residences in New York, Los Angeles, and Mallorca, Spain. Plaintiff Paulus was even asked to assume responsibility for running personal errands, to which she agreed.

20.   Plaintiff is over 45 years of age and possessed all qualities that Defendants originally sought in an employee-candidate, including maturity, personality, organizational

skills and exceptional work ethic.

21.   Currently the Plaintiff is 65 years old.

22.   In fact, Plaintiff was the eldest of employees working for the Marks family.

23.   Defendants provided a workspace for the Plaintiff between 2014-2016, which was a
      studio apartment on East 67th Street.

24.   Defendants then moved Plaintiff into a further restricted, closet-like space within the
      Marks' Park Avenue residence, where Plaintiff continued to serve the Marks family
      until 2020.

25.   For six years, Plaintiff's job responsibilities consistently increased, after she
      demonstrated not only an ability to meticulously handle a substantial workload, but also
      the ability to work well with others on the Marks' team, along with contributing to the
      stability and efficacy of the entire personal staff.

26.   These increased job responsibilities included overseeing compliance with labor laws
      insofar as the rest of the staff was concerned, executing large financial transactions,
      monitoring tax payments, managing staff payroll, benefits, hiring, firing; assisting with
      art inventory of a highly valuable collection and maintaining a proprietary database of
      financial and charitable contributions to third parties.

27.   In or around 2016, upon moving the Plaintiff's office to the Marks' Park Avenue
      residence, Defendant Mrs. Marks specifically and condescendingly requested that
      Plaintiff change how she dresses to work, insisting that she desired an assistant with a
      **"younger and more elegant look",** now that Plaintiff was working directly out of their
      Park Avenue residence.

28.   In or around the same year, 2016, Defendant Mrs. Marks made further disparaging
      comments to Plaintiff specifically regarding her weight; comments which directly
      related to the Plaintiff's age. Mrs. Marks was heavily preoccupied with the weight and

appearance of her staff members and directly asked the Plaintiff why she is unable to lose more weight. Plaintiff explained to Defendant Mrs. Marks that she has no thyroid and for this medical reason, which was exacerbated, aggravated and reactivated by the Plaintiff's age, she was unable to lose more weight in order to please Mrs. Marks. To this Mrs. Marks replied "this is an unacceptable explanation, ***even at your age,***" and insisted that Plaintiff seek further medical remedies and "see different doctors."

29.    Defendants even went so far as to attack Plaintiff for being affectionately called "momanger" by the rest of the younger staff, again expressing their discontent for her older age and highlighting the discrepancy between Plaintiff and the younger members of the personal staff.

30.    In or around the Summer of 2016, a younger staff member was caught publicly exhibiting inappropriate sexual behavior in the staff pool area of the Defendants' East Hampton home, and thus Plaintiff rightfully reported him to Mr. and Mrs. Marks.

31.    In response, Mrs. Marks berated Plaintiff for reporting the younger staff member, and directly accused Plaintiff of being "rigid, prudish and old-fashioned" on account of her age, further demonstrating the Marks' extreme bias directly against Plaintiff and in favor of younger staff members.

32.    In or around the Summer of 2018, Plaintiff was instructed to terminate the employment of a house manager for the East Hampton property and specifically replace this employee with a younger employee. Upon expressing discontent at the unlawful instruction, especially since the new candidate lacked the necessary credentials and experience of credentials and experience, Defendant Mrs. Marks directly accused Plaintiff of being "unsupportive of young talent."

33.    Yet again, the Defendants blatantly displayed their bias against older staff members and favoritism for younger ones. The terminated employee regrettably committed suicide

three days after Plaintiff was instructed to fire him and replace him with a younger house manager for the East Hampton property.

34.   Younger team members were regularly encouraged and financially supported to take educational courses and vocational training to enhance their knowledge of wines, culinary skills and other similar skills.

35.   On multiple occasions, younger nannies were offered the use of Defendants' private vacation homes for leisure. However, when it came to Plaintiff, she was barely permitted to have her daughter pick her up from the Marks' Park Avenue office. The Plaintiff was only given a one-time exception for her daughter to pick her up from work.

36.   The situation only worsened as Plaintiff's duration of employment continued.

37.   In or around the middle of 2020, during the current COVID-19 pandemic period, all younger staff members were offered "quarantine pay"- a significant increase in staff member salaries to compensate for the imminent hardships of the pandemic.

38.   Tellingly, all younger staff members *except* Plaintiff Monika Paulus the eldest of similarly situated employees received the increase, demonstrating not only a bias against her age but a direct financial disparity in salaries specifically because of her older age.

39.   On or about Saturday, October 10, 2020, Defendants informed Plaintiff that her job responsibilities were being delegated specifically to a younger team that was working for Defendants' son, Mr. Andrew Marks. Defendants also advised the Plaintiff that she would be working from home going forward.

40.   This came as a surprise to Plaintiff since she always worked assiduously to complete each task on time for the Defendants

41.   This was a completely new position with a new supervisor that was being offered to the Plaintiff.

42.     Most importantly, Plaintiff was informed that as a result of the shift to Defendants' son, Defendants would be cutting Plaintiff's salary from $227,500 to $150,000 (a salary decrease of $77,500).

43.     The Defendants cut the Plaintiff's salary almost in half, suddenly and abruptly while all the younger employees were now getting higher salaries due to the pandemic.

44.     Plaintiff was specifically told that a new employment post would be offered to her in lieu of her traditional responsibilities during the transition period to the younger staff members.

45.     On or about October 12, 2021, the Plaintiff emailed Defendants and stated: **"In the midst of a pandemic and at my current age, it is my impression that you are taking advantage of my age and limited options by forcing me to accept what are really unacceptable terms for a person with my education and work experience."** Plaintiff further stated: **"I see this as an effort to get "rid of the old lady and push me out of my job."**

46.     Essentially, Plaintiff made a protected complaint regarding age while also inquiring about her new position and her reduction in salary.

47.     Upon receipt of the Plaintiff's complaints and inquiry, the Defendants provided no substantive response to the Plaintiff other than Mr. Glynn's text message instructing the Plaintiff to be "conciliatory."

48.     On or about October 13, 2020, the Defendants instructed the Plaintiff that from now on she would have to work from home and therefore Plaintiff went to the Defendants' office and removed several personal photographs from her office.

49.     On or about October 14, 2020, Defendants' attorney, Mr. Oscar Michelen, emailed the Plaintiff stating that: **"In the process of reorganizing their financial affairs the Marks' offered you a well-salaried position that they felt suited everyone's needs,**

including yours."

50.    Upon information and belief, Defendants' attorney Mr. Michelen's statement that there was **"a process of reorganizing their financial affairs"** is patently false since all the Defendants' younger employees' salaries were raised while Plaintiff's salary was to be cut down by $77,500.00.

51.    Defendants' attorney Mr. Oscar Michelen, acting as an agent for Defendants, further advised the Plaintiff that she had effectively resigned her position by picking up her belongings. Michelen wrote to the Plaintiff: **"Rejection of the new employment terms and the act of clearing out your belongings is a resignation."**

52.    Plaintiff cannot fathom how Defendants can claim that one can resign a position that she was never even hired for, as Plaintiff was not hired by Mr. Andrew Marks but by Defendants Howard and Nancy Marks.

53.    If Defendants offered the Plaintiff a new position and the Plaintiff declined, Plaintiff expected that she would have been allowed to hold her current position as a direct Personal Assistant to the Marks family.

54.    Instead, Defendants gave the Plaintiff an ultimatum, stating that if she refused her new position with the lesser salary and completely different responsibilities, she is effectively resigning from her current position.

55.    In addition, Mr. Michelen's email further states: **"While it seems apparent that you do not want the job on the new terms and have resigned"** makes absolutely no sense since Plaintiff had made no such representations.

56.    There was no evidence to suggest that Plaintiff resigned her position as a direct assistant to Defendants.

57.    Plaintiff did not intend to resign from her position from Defendants Howard and Nancy Marks and was simply lodging a protected complaint and inquiry regarding her

position.

58.   Furthermore, attorney for Howard and Nancy Marks, Mr. Michelen, claimed that the
      Defendants tried to reconciliate with the Plaintiff by having Plaintiff speak with James
      Glynn, who Defendants' claim was Plaintiff's supervisor.

59.   However, Mr. Glynn was not Plaintiff's supervisor. In fact, Mr. Glynn was Plaintiff's
      peer that Plaintiff collaborated no more than two or three times a year to present reports
      to the Marks family.

60.   In addition, Mr. Glynn nor any of the Defendants or their employees made any efforts
      to remedy the situation; or address Plaintiff's complaints of age discrimination.

61.   The Defendants proffered reasoning surrounding resignation was merely pretextual.

62.   The above facts amount to an unlawful termination.

63.   Defendants discriminated and retaliated against the Plaintiff based on her age.

64.   On or about October 14, 2021, **after Marks' agent and attorney Mr. Michelen
      determined that the Plaintiff had "resigned,"** he demanded that the Plaintiff return
      Plaintiff's work laptop with all its files intact, as well as her keys and to provide the
      Marks family with a full list of all accounts and passwords.

65.   Furthermore, **Mr. Michelen threatened the Plaintiff and advised her that if she does
      not cooperate with a smooth "resignation" transition, the Marks' will contest her
      unemployment application, forcing the Plaintiff into resignation.**

66.   Defendants had full knowledge that Plaintiff had no other income and was further
      caring for her husband who suffers from a disability.

67.   Instead of engaging in an interactive process after Plaintiff complained of age
      discrimination, Defendants retaliated against the Plaintiff, forced her to resign and
      threatened her with the rejection of her unemployment application.

68.   In addition, Mr. Michelen spoke with the Plaintiff on the phone and stated: **"You know**

**you are up against a billionaire with unlimited resources, be smart here."**

69. On or about October 15, 2021, Defendants left the Plaintiff in a state of despair, having taken away her job, severance pay, health insurance benefits and chance of unemployment. In a state of desperation and not wanting to lose her unemployment benefits, Plaintiff gave in to the Defendants threats and emailed Mr. Michelen, stating in sum and substance that she would mail the computer and key as she did not feel comfortable coming back to such a hostile work environment.

70. Soon thereafter, Defendants claimed that Plaintiff was not discriminated based on her age, since Mr. Glynn has been hired to do Plaintiff's chores and Mr. Glynn is of similar age to the Plaintiff.

71. However, Defendants "legitimate non-discriminatory" reasoning is merely pretextual because upon information and belief, on or about May of 2021, Defendants hired a new younger assistant to replace the Plaintiff.

72. The above facts are examples of discriminatory and disparate treatment Plaintiff endured on account of her age.

73. Since Defendants determined that Plaintiff had "resigned," without prior notice and with little or no hope of returning to her position or a similarly situated position, the above actions by the Defendants qualify as an adverse employment action.

74. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, and emotionally distressed.

75. More importantly and most materially, Plaintiff was subjected to extremely disparate treatment, both financially and personally as compared to otherwise similarly situated staff members who lacked her credentials and experience.

76. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress for which Plaintiff

has sought treatment with a mental health professional.

77.    For years, Plaintiff not only maintained the utmost loyalty towards her employers,
       Plaintiff also executed her duties with extreme care and most importantly, with extreme
       discretion, as is expected when one is intimately involved with a family's personal
       financial affairs.

78.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will
       continue to suffer the loss of employment, loss of income, the loss of a secure salary,
       bonuses, benefits and other compensation which such employment entails.  Plaintiff
       has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of
       enjoyment of life, and other non-pecuniary losses.

79.    Furthermore, Defendants were aware of Plaintiff's financial situation and medical
       situations concerning her family.

80.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with
       full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants
       jointly and severally.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE ADEA
## (Not Against Individual Defendants)

81.    Plaintiff repeats and realleges each and every allegation made in the above
       paragraphs of this complaint.

82.    The ADEA states in relevant part as follows:

       It shall be unlawful for an employer

              (1) to fail or refuse to hire or to discharge any individual or otherwise
              discriminate against any individual with respect to his compensation,
              terms, conditions, or privileges of employment, because of such
              individual's age;

              (2) to limit, segregate, or classify his employees in any way which would
              deprive or tend to deprive any individual of employment opportunities
              or otherwise adversely affect his status as an employee, because of such

1

individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

(b) It shall be unlawful for an employment agency to fail or refuse to refer for employment, or other-wise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

83. Defendants demoted and later unlawfully discharged the Plaintiff and age with a determinative factor in Defendants' tangible employment decisions.

84. Plaintiff is a member of a protected class, was qualified for her position and suffered an adverse employment action.

85. Plaintiff not only alleges comments and conducts of a discriminatory nature but further alleges that she faced disparate treatment and was replaced by a younger employee.

86. Defendants further subjected the Plaintiff to a hostile work environment as Defendants conduct was unwelcomed, age was a motivating factor in such conduct and Plaintiff was subjected to a severe and/or pervasive work environment which culminated with Plaintiff's termination.

## AS A SECOND CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE ADEA-RETALIATION
### (Not Against Individual Defendant)

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. It shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."

89.   Under the ADEA, Plaintiff made protected complaints regarding age discrimination to her employer.

90.   As a result of the above complaints, Plaintiff was subjected to a materially adverse action at the time or after the protected conduct took place.

91.   There was a causal connection between Plaintiff's complaints and the unlawful adverse actions that followed which included but are not limited to demoting the Plaintiff, usurping Plaintiff's work duties, lowering Plaintiff's salary, threatening Plaintiff's unemployment benefits, attempting a forced resignation, and ultimately terminating the Plaintiff.

92.    Defendants engaged in unlawful employment practices prohibited under the ADEA by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR
### DISCRIMINATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

93.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

95.    Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

96.      Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

97.      The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

98.      Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (As Against Individual Defendants)

99.      Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100.      New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

1

101.     Defendants violated the section cited herein as set forth.


## AS A SIXTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

102.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

104.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


## AS A SEVENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

105.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

106.     New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.   An employer shall be liable for an unlawful discriminatory practice based upon

the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

107.     Defendants violated the section cited herein as set forth.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## STATE LAW
## (Not Against Individual Defendants)

108.     Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

109.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

110.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of Executive Law Section 296.

## AS A NINTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

111.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

113.     Defendants engaged in an unlawful discriminatory practice by discharging, demoting, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff s opposition to the unlawful employment practices of Plaintiff s employer.

## AS A TENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

114.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

115.     New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

116.     Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AN ELEVENTH CAUSE OF ACTION FOR
## UNLAWFUL TERMINATION UNDER STATE LAW
### (Not against individual Defendants)

117.   Plaintiffs repeat and re-allege the allegations set forth above.

118.   Upon information and belief, Defendants unlawfully terminated Plaintiff because of her

age in violation of § 296(1)(a) of the NYSHRL.

119.   As a proximate result of Defendants' harassment and discrimination, Plaintiff has

suffered and continue to suffer severe and lasting embarrassment, humiliation, anxiety,

stress, emotional distress, and mental anguish.

120.   Defendants' conduct was done in conscious disregard of Plaintiffs' rights.

121.   Judgment should be entered in favor of Plaintiffs and against Defendants for all

compensatory and emotional damages, along with lost past and future earnings and

other employment benefits, if applicable, reasonable attorney's fees, the costs and

disbursements of this action, and any other damages permitted by law in an amount to

be determined at trial.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all

Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil
rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of

Defendants' unlawful and unjustified conduct, in an amount just and reasonable

and in conformity with the evidence at trial in an amount to be determined at

trial;

(c) punitive damages against the individual Defendants assessed to deter such

intentional and reckless deviations from well-settled constitutional standards, to

the extent allowable by law;

1

(d) damages for emotional distress, lost wages, back pay, front pay, statutory

damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all
other applicable laws; and

(e) such other and further relief as appears just and proper.


Dated: New York
      August 19, 2021

                              **L& D Law, P.C.**
                              **Liggieri & Dunisha**

                              _____**/s/**_____

                              *Attorneys for Plaintiff*
                              Alban Dunisha, Esq.
                              11 Broadway, Suite 615
                              New York, NY 10004
                              (212) 374-9786